USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1249 CHAULK SERVICES, INC., Plaintiff - Appellant, v. MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Reginald C. Lindsay, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Lynch, Circuit Judge, _____________ and Casellas,* District Judge. ______________ _____________________ Arthur P. Menard, with whom Paul J. Murphy and Menard Murphy ________________ ______________ _____________ & Walsh were on brief for appellant. _______ Macy Lee, Assistant Attorney General, with whom Scott _________ _____ Harshbarger, Attorney General of Massachusetts, was on brief for ___________ appellee Massachusetts Commission Against Discrimination; Katherine McClure on brief for appellees Petrina ____________________ Doulamis/Sullivan and International Association of EMTs & Paramedics, NAGE and AFL-CIO. ____________________ November 27, 1995  ____________________ * Of the District of Puerto Rico, sitting by designation. ____________________ -2- CASELLAS, District Judge. Plaintiff-appellant Chaulk CASELLAS, District Judge. ______________ Services, Inc. ("Chaulk") originally brought this action for declaratory judgment, preliminary and permanent injunctive relief against the Massachusetts Commission Against Discrimination ("MCAD")("the Commission"), Petrina Doulamis/Sullivan ("Doulamis") and the International Association of EMTs & Paramedics, NAGE, AFL-CIO ("the Union"), to prevent defendants- appellees from proceeding with the case of Doulamis v. Chaulk ________ ______ Services, Inc., 93-BEM-2145, then pending before the MCAD, on the ______________ basis that the action was preempted by federal law, particularly, the National Labor Relations Act ("NLRA")("the Act"), 29 U.S.C.  151 et seq. The district court abstained from deciding Chaulk's ______ preemption claim, citing Younger v. Harris, 401 U.S. 37 (1971), _______ ______ Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., _____________________________ _______________________________ 477 U.S. 619 (1986) and Brotherhood of Locomotive Engineers v. ____________________________________ MCAD, 695 F. Supp. 1321 (D. Mass. 1988), and consequently ____ dismissed Chaulk's complaint. We vacate the judgment below and remand the case to the district court. I. STATEMENT OF THE CASE I. STATEMENT OF THE CASE _____________________ A. Facts A. Facts In the middle of 1993, the International Association of EMTs and Paramedics, NAGE, AFL-CIO, began a union organization campaign at Chaulk. Doulamis became involved in the campaign sometime during the fall of 1993, when she and Eric Burgess, a male Chaulk employee, wrote a letter to the president of Chaulk's parent company calling for the organization of a union. On -2- November 10, 1993, Chaulk's CEO Nicholas O'Neil and Joseph Gilmore, vice-president, as part of their own campaign against the union organization effort, met with Doulamis in an attempt to pressure her into becoming a non-union advocate. Doulamis declined their invitation. As a result of this meeting, the Union filed unfair labor practice charges on November 29, 1993 with the National Labor Relations Board ("NLRB") against Chaulk, claiming that it coerced and intimidated Doulamis, a known union organizer, by questioning her regarding union activities and threatening retaliation for those union activities, in violation of the Act. On December 6 and 9, 1993, the Union filed two additional charges with the NLRB, both of which alleged that Chaulk interfered with Doulamis' labor activity rights and discriminated against her because of her union organization efforts.1 Thereafter, the NLRB issued a complaint against Chaulk alleging specific violations of 8(a)(1) and (3) of the NLRA, and charging that Chaulk had interfered with, restrained and coerced several employees, including Doulamis, in the exercise of rights guaranteed by 7 of the Act. With respect to Doulamis, the complaint alleged that on November 29, 1993 Chaulk issued a  ____________________ 1 The Union filed several additional unfair labor practice charges against Chaulk stemming from its alleged interference with the protected rights of numerous other employees. Here, we refer in particular only to those which, according to the parties, involve charges of unlawful conduct directed against Doulamis. Furthermore, while Doulamis is not named as the aggrieved employee in these charges, both parties agree that the employee referred to therein is, in fact, Doulamis. -3- written warning and on December 7, 1993 issued a letter addressed to Doulamis threatening her with discipline if she attended any future 401(K) meetings held by Chaulk with its employees. In addition, the complaint charged that on December 2, 1993, Chaulk suspended the coauthor of the pro-union letter, Eric Burgess. According to the complaint, Chaulk engaged in this conduct because it mistakenly believed that Doulamis, together with several of her fellow employees, had engaged in misconduct arising out of union or other protected concerted activity. See ___ Complaint and Notice of Hearing at s 7-8. It is also alleged that these employees formed, joined and assisted the Union and otherwise engaged in concerted activities, and that Chaulk's conduct was a deliberate attempt to discourage the employees from engaging in these activities, in violation of sections 8(a)(3) and (1) of the Act. See Complaint and Notice of Hearing at s 7- ___ 10. A full and comprehensive settlement agreement was reached between Chaulk and the NLRB in March 1995 regarding these claims. As part of the settlement, Chaulk agreed to, inter alia, _____ ____ expunge from its files any reference to the transfer of Eric Burgess; the written warnings set forth in the complaints of Doulamis, Richard Graham, Chris Adler, Gary Winitzer, Jim Taubert and Jean Taubert; the suspensions of Eric Burgess, Chris Adler, Jim Taubert, Jean Taubert, Gary Winitzer, Michael Cook, Kathryn Edwards and James McLaughlin; and the terminations of Fran Wilkerson, John Borden and McLaughlin. In addition, Chaulk -4- agreedto payout approximately$12,000in backpay tothese employees. Meanwhile, on December 1, 1993, after the Union had already filed its first charge with the NLRB, Doulamis filed a complaint with the MCAD against Chaulk, claiming she had been a victim of unlawful sex discrimination. Specifically, she complained of being harassed about her union activity, allegedly because of her gender, in that the "males who are also involved [in the union activity] are not being harassed." On February 18, 1994, Chaulk moved to dismiss Doulamis' complaint at the MCAD for lack of jurisdiction, on the grounds that it was preempted by federal law. On May 13, 1994, the MCAD issued an order denying the motion to dismiss and retaining jurisdiction over Doulamis' discrimination claims, reasoning that it did not have to address the merits of the underlying labor dispute in order to resolve the allegations of gender discrimination. The Commission then promptly issued a set of interrogatories to Chaulk, requesting detailed information about all known union organizers, their role in organizing efforts and any significant acts of union organizing known to appellant, including copies of any communications between Chaulk and Doulamis relative to the union organization effort. B. Proceedings Below B. Proceedings Below The present action was filed in the United States District Court for the District of Massachusetts on December 8, 1994, seeking a declaratory judgment as well as an injunction barring the continued prosecution of Doulamis' complaint before -5- the MCAD. Chaulk claimed that the Commission's assertion of state authority over her charge directly threatened and significantly interfered with the jurisdiction of the NLRB. As noted above, the district court granted MCAD's motion to dismiss on abstention grounds. It did not decide the preemption issue. Chaulk now appeals the district court's judgment. II. ANALYSIS II. ANALYSIS ________ A.Preemption A.Preemption Relying on the doctrine of preemption first enunciated in San Diego Building Trades v. Garmon, 359 U.S. 236 (1959), __________________________ ______ appellant argues that the district court erred in allowing the Commission's motion to dismiss on the grounds of Younger _______ abstention and that it should have decided the preemption issue. Citing primarily to Bud Antle, Inc. v. Barbosa, 35 F.3d 1355 (9th _______________ _______ Cir. 1994), Chaulk asserts that when it is clear that the state tribunal is acting beyond the lawful limits of its authority, there is no principle of comity that is served by abstention. Id. at 1356. Accordingly, it urges us to find the Younger __ _______ abstention doctrine inapplicable to this case, address the merits of its preemption claim, and declare that appellee's charge of sex discrimination before the Commission is indeed preempted by federal law. We begin by delineating the present scope of the so called Garmon preemption doctrine. The Supreme Court held in ______ Garmon that when an activity is arguably subject to 7 or 8 of ______ the National Labor Relations Act, the states as well as the -6- federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted. Id. at 245. When Congress enacted the NLRA, it __ enacted comprehensive procedural rules and created the NLRB to administer this specially designed regulatory structure. The result was a complex and interrelated scheme of federal law, remedies and administration designed to achieve uniformity in our national labor policy. Garmon, 359 U.S. at 242; New York ______ _________ Telephone Co. v. New York Dept. of Labor, 440 U.S. 519, 527 _____________ __________________________ (1979); Jones v. Truck Drivers Local Union No. 299, 838 F.2d 856, _____ _________________________________ 872 (6th Cir. 1988)(Merritt, J., concurring in part and dissenting in part). In order to achieve the desired uniformity, Congress entrusted the interpretation and enforcement of the NLRA to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience. See Garmon, 359 U.S. at 242. This administrative ___ ______ scheme was designed to avoid the danger of conflicting or incompatible adjudications such as would inevitably result from having multiple forums, with their diverse procedures, entertain claims under the NLRA. Garner v. Teamsters, Chauffeurs and ______ __________________________ Helpers Local Union No. 776, 346 U.S. 485, 490-91 (1953). The ____________________________ Garmon rule is therefore intended to preclude state interference ______ with the NLRB's interpretation and enforcement of the integrated scheme of regulation established by the NLRA. Golden State ____________ Transit Corp. v. City of Los Angeles, 475 U.S. 608, 613 (1986). _____________ ___________________ -7- Withal, the Garmon rule admits of some exceptions to ______ the NLRB's primary jurisdiction. For instance, where the conduct at issue is of only "peripheral concern" to federal labor policy, the states are not precluded from regulating the activity. Garmon, 359 U.S. at 243. Similarly, state action is not ______ preempted where the regulated conduct touches interests "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, courts cannot infer that Congress has deprived the states of the power to act." Id.2 __ When called to determine whether these exceptions apply, courts must balance the state's interest in remedying the effects of the challenged conduct against both the interference with the NLRB's ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits. Belknap, Inc. v. Hale, 463 U.S. 491, 498-499 (1983); NLRB v. ______________ ____ ____ State of Ill. Dept. of Emp. Sec., 988 F.2d 735, 739 (7th Cir. __________________________________ 1993). In doing so, we intentionally focus on the conduct at the  ____________________ 2 Courts have recognized a third exception to the Garmon ______ doctrine where Congress has expressly carved out such an exception to the NLRB's primary jurisdiction. See Tamburello v. ___ __________ Comm-Tract Corporation, No. 95-1295, slip op. at 6 (1st Cir. _______________________ October 2, 1995) (citing Vaca v. Sipes, 386 U.S. 171, 179-80 ____ _____ (1967); Brennan v. Chestnut, 973 F.2d 644, 646 (8th Cir. 1992)). _______ ________ Congress has not made an exception to the NLRB's primary jurisdiction for claims alleging sex discrimination in the context of an unfair labor practice. See Jones v. Truck Drivers ___ _____ _____________ Local Union, 838 F.2d at 861 (sexual discrimination is a breach ___________ of duty of fair representation and within scope of 8 of the NLRA); NLRB v. Local 106, 520 F.2d 693 (6th Cir. 1975)(same). ____ _________ This exception therefore does not apply to the facts in this case. -8- root of this controversy, namely Chaulk's alleged interference with Doulamis' union activities, as opposed to the descriptive title of sex discrimination given to her cause of action before the MCAD. That is because preemption is designed to shield the system from conflicting regulation of conduct. "It is the _______ conduct being regulated, not the formal description of governing legal standards that is the proper focus of concern." Amalgamated Ass'n of St., E.R. & M. C. Emp. v. Lockridge, 403 ______________________________________________ _________ U.S. 274, 292 (1971). See also, Garmon, 359 U.S. at 246 ("It is ___ ____ ______ not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdiction"). Doulamis' complaint highlights the risk that a state cause of action will touch on an area of primary federal concern. She complains of incidents of interference with her union activities as a union organizer. The very same conduct provides the factual basis for the unfair labor practice charges brought by the Union on her behalf, which were eventually incorporated into the complaint and notice of hearing issued by the NLRB. Her claims are fundamentally grounded in an assertion that the rights which her employer interfered with involve her union activity. Where, as here, the case involves conduct arguably prohibited by 8 of the Act, the NLRB has broad authority to determine the appropriate remedy for wronged employees.3 "In fact, since  ____________________ 3 MCAD presses the argument that gender-based discrimination is not even within the realm of prohibited activities under the NLRA. According to MCAD, the scope of prohibited discrimination -9- remedies form an ingredient of any integrated scheme of regulation, to allow the state to grant a remedy here which has been withheld from the NLRB only accentuates the danger of conflict." Garmon, 359 U.S. at 247; Richardson v. Kruchko & ______ __________ _________ Fries, 966 F.2d 153, 157 (4th Cir. 1992). Board authority over _____ claims of interference with union activities is not merely of peripheral concern to the Act. Rather, the Board's authority to remedy such practices is central to its purpose. See Tamburello ___ __________ v. Comm-Tract Corporation, No. 95-1295, slip op. at 9 n.5 (1st ______________________ Cir. October 2, 1995). Moreover, the fact that the Union clearly considered Chaulk's conduct an unfair labor practice, and that the Board entertained such charges, only buttresses the Court's conclusion that said conduct is not only "arguably", but obviously prohibited under section 8(a) of the NLRA. It also highlights the very real danger of interference with the NLRB's jurisdiction, as it was precisely the Board's timely intervention which in this case led to the agreement through which Chaulk pledged, among other things, not to engage in the challenged conduct, or take similar actions to hinder its employees in their union activities. Significantly, the Supreme Court has held that in cases  ____________________ under the Act is limited to discrimination based on union activities or membership. Still, the argument has been made successfully that sexual discrimination constitutes an unfair labor practice under 8 of the NLRA. See Jones v. Truck Drivers ___ _____ _____________ Local Union, 838 F.2d at 861 (sexual discrimination is a breach ___________ of duty of fair representation and within scope of 8 of the NLRA); NLRB v. Local 106, 520 F.2d 693 (6th Cir. 1975)(same). ____ _________ -10- where the underlying conduct is arguably prohibited by the NLRA, application of the so-called "local interests" exception hinges, in the first place, upon the existence of a significant state interest in protecting its citizens from the challenged conduct. In second place, the controversy which could be presented to the state court must be different from that which could have been presented to the NLRB. Sears, Roebuck & Co. v. San Diego County ____________________ ________________ Dist. Council of Carpenters, 436 U.S. 180, 196-97 (1978). See ____________________________ ___ also, Tamburello v. Comm-Tract Corporation, No. 95-1295, slip op. ____ __________ ______________________ at 14 (1st Cir. October 2, 1995). Under the Sears rationale, the critical inquiry is _____ whether the controversy presented to the state court is identical to or different from that which could have been presented to the NLRB.4 Sears, 436 U.S. at 197. The Court reasoned that it is _____ only in the former situation that a state's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the Garmon ______  ____________________ 4 We note that Sears is not entirely on point, as it differs _____ from the instant case in at least one fundamental respect. In that case, the Court was presented with a situation where the party seeking relief in the state forum had no right to invoke the Board's jurisdiction and the party that had the right to invoke the Board's jurisdiction had failed to do so. The Court expressed concern that in the circumstances of that case, Sears may not have a chance for a hearing on its claims if state jurisdiction were preempted without any assurance that the dispute might eventually be brought before the NLRB. The Court reasoned that preemption was justified only when an aggrieved party has a reasonable opportunity either to invoke the Board's jurisdiction himself or else to induce his adversary to do so. Id. at 201. Here, of course, there is no such concern, as the __ Union filed the unfair labor practice charges with the NLRB even before Doulamis filed her gender discrimination claims before the Commission. -11- doctrine was designed to avoid. Id. We assume arguendo that the __ ________ Commonwealth of Massachusetts has a significant interest in protecting its citizens against sex discrimination in their employment. Following the guidelines set forth by the Supreme Court in Sears, we therefore examine whether the controversy _____ before the state forum would indeed be the same as that which could be brought before the NLRB. Id. __ In this regard, it is telling that the Union, upon learning of Chaulk's alleged interference with Doulamis' activities as a union organizer, promptly filed an unfair labor practice charge on her behalf, claiming violations of 8 of the Act--thereby clearly characterizing the controversy as a labor dispute, subject to the NLRB's primary jurisdiction. For its part, the NLRB received the Union's allegations regarding Chaulk's conduct--the same conduct that would later form the basis for Doulamis' discrimination claim before the MCAD-- investigated them, proceeded then to issue a Complaint and Notice of Hearing, and eventually settled the matter. Plainly, this is not a case where the NLRB declined to exercise its lawful jurisdiction over a labor controversy, or where the NLRB's actual exercise of jurisdiction remains a matter of speculation. On the contrary, the Board in this case moved aggressively to acquire such jurisdiction and bring the matter to a full and speedy resolution. Furthermore, even Doulamis' own pleadings before the Commission couch her claims in terms of a labor dispute within -12- the NLRB's primary jurisdiction. Her complaint accuses Chaulk of harassment "about [her] union activities." She also claims to have been "intimidated by Mr. O'Neil about involvement in union activity" and "accused of distracting the other employees with union activity." As noted above, such conduct on the part of Chaulk, if adequately established through competent evidence, would constitute an undue interference with Doulamis' rights under 7 of the NLRA and consequently a violation of 8(a)(1) of the Act. The application of additional remedies to the conduct here at issue only invites conflict. As the Supreme Court stated in Garmon, "[t]he obligation to pay compensation can ______ be, indeed is designed to be, a potent method of governing conduct and controlling policy." Id. at 247. See Sears, Roebuck __ ___ ______________ & Co., 436 U.S. at 193-94 ("[T]he pertinent inquiry is whether ______ the two potentially conflicting statutes [are] brought to bear on precisely the same conduct.") (citations omitted). As discussed above, Doulamis' claim of sex discrimination is founded upon the identical facts which provided the basis for the unfair labor practices charge brought on her behalf by the Union. Accordingly, under the Garmon rationale, her claim before the ______ Commission is expressly preempted. Moreover, as pointed out by Chaulk, the interrogatory issued by the MCAD in the course of the investigation and prosecution of Doulamis' case belies the Commission's assertion that it need not delve into the labor aspects of the controversy in order to dispose of her gender discrimination claims. Rather, -13- the interrogatory is further proof that issues of labor law ordinarily considered to be within the NLRB's primary jurisdiction are precisely the type of questions that lie at the heart of this controversy. Finally, in order to determine the merits of Doulamis' claims of sex disrimination, the MCAD will have to decide whether in fact Doulamis was engaged in protected union activity, and if so, whether she was engaged in the same type of union activity as the other union organizers. Such a finding requires that the MCAD become embroiled in a factual and legal determination of what constitutes union activity, a task which has been expressly reserved to the jurisdiction of the NLRB. More importantly, if the Commission were allowed to entertain Doulamis' claim of sexual discrimination, there is the potential risk that it will incorrectly apply the substantive rules governing labor controversies laid out by Congress in the NLRA. It is precisely this potential for incompatible or conflicting adjudications that Congress sought to avoid by leaving these determinations in the first instance to the NLRB. In the end, no recharacterization of this claim can obscure the fact that, at bottom, this is a classic example of an unfair labor practice claim of the kind traditionally handled in the first instance by the NLRB. Since the controversy before the MCAD and that resolved by the NLRB are the same in a fundamental respect, and the risk of interference with the Board's jurisdiction is obvious and substantial, we hold that the MCAD -14- has no jurisdiction to entertain Doulamis' charge of sexual discrimination based on her employer's alleged interference with her union activities. International Union of Operating Engineers __________________________________________ v. Jones, 460 U.S. 669, 674 (1983).5 _____ B.Abstention B.Abstention We turn now to what is in essence the threshold issue in this appeal-whether the district court erred in abstaining under the Younger doctrine. In Younger v. Harris, 401 U.S. 37 _______ _______ ______ (1971), the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury. Younger stands for the _______ proposition that principles of comity require "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States are left free to perform their separate functions in their separate ways." Id. at 44. The Court has __ since applied its reasoning in Younger to civil proceedings in _______  ____________________ 5 The dissent devotes a considerable number of pages to the issue of whether Title VII and the NLRA provide concurrent remedies. The Supreme Court has made clear however, that when a state proceeding is claimed to be preempted by the NLRA under Garmon, the issue is a choice-of-forum rather than a choice-of- ______ law question. See International Longshoremen's Association v. ___ _________________________________________ Davis, 476 U.S. 380, 391 (1986). As such, "it is a question _____ whether the State or the Board has jurisdiction over the dispute." Id. If--as here--there is preemption under Garmon, __ ______ then state jurisdiction is extinguished. Id. See also, __ ___ ____ International Union of Operating Engineers v. Jones, 460 U.S. at ___________________________________________ _____ 680-81; Sears, 436 U.S. at 199 n.29; Garmon, 359 U.S. at 245. _____ ______ -15- which important state interests are involved. See Huffman v. _______ Pursue, Ltd., 420 U.S. 592 (1975); Juidice v. Vail, 430 U.S. 327 ____________ _______ ____ (1977); Trainor v. Hern ndez, 431 U.S. 434 (1977). _______ _________ In Ohio Civil Rights Comm'n v. Dayton Christian ___________________________ _________________ Schools, 477 U.S. 619 (1986), the principles of comity first _______ announced in Younger were made extensive to state administrative _______ proceedings. As a result, where (1) vital state interests are involved, (2) in an ongoing state judicial (or administrative) proceeding, a federal court should abstain from exercising its jurisdiction over a claim, (3) unless state law clearly bars the interposition of the constitutional claims. See Middlesex County ________________ Ethics Comm. v. Garden State Bar Assn, 457 U.S. 423, 432 (1982); ____________ _____________________ Moore v. Sims, 442 U.S. 415 (1979). "The pertinent inquiry is _____ ____ whether state proceedings afford an adequate opportunity to raise the constitutional claims." Middlesex, supra. _________ The dissent asserts that, rather than a principle of discretionary deference, Younger abstention requires a district _______ ________ court to abstain whenever a case falls within the doctrine's parameters. To the extent it relies on the Supreme Court's decision in Colorado River Water Conservation District v. United ___________________________________________ ______ States, 424 U.S. 800, 816 n.22 as support for this blanket rule, ______ however, we respectfully differ. The cited passage on which the dissent relies clearly refers to that category of cases where federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. And even for that ________ category of cases, the Supreme Court makes clear that abstention -16- is only appropriate absent bad faith, harassment, or a patently invalid state statute. Id. at 816. In fact, Colorado River __ _______________ strongly reaffirmed the basic principle that abstention from the exercise of federal jurisdiction is the exception, not the rule: The doctrine of abstention, under which a district court may decline to exercise or ___ postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. It was never a doctrine of equity that a federal court should exercise its judicial discretion ________ ___ ________ __________ to dismiss a suit merely because a State court could entertain it." Colorado River, 424 U.S. at 813-14 (emphasis supplied; citations ______________ omitted). See also, New Orleans Public Service, Inc. v. Council ___ ____ ________________________________ _______ of the City of New Orleans, 491 U.S. 350, 359 (1989). __________________________ The Commission argues that the case at bar fits squarely within the principles of Younger abstention. We _______ disagree. First, the procedural posture of this case differs from that of the customary case where abstention is traditionally applied. Ordinarily, federal courts abstain from the exercise of jurisdiction over a particular controversy out of respect for an ongoing state proceeding begun before the federal action. It is thought that this procedural mechanism forestalls the friction that can arise when the business of the two systems--state and federal--overlaps. But the notion of comity, which to a great -17- extent underlies the Younger doctrine of abstention, must _______ accommodate the legitimate interests of both the state and ____ national governments. Younger, 401 U.S. at 44; Pennzoil Co. v. _______ _____________ Texaco, Inc., 481 U.S. 1, 10 (1987). ____________ In abstaining, the court below seemingly focused on the situation that existed on December 8, 1994, when Chaulk's complaint for declaratory and injunctive relief was filed in the United States District Court for the District of Massachusetts. In doing so however, the court ignored the fact that an unfair labor practice charge, based on the same facts underlying Doulamis' complaint of sex discrimination, had been filed against Chaulk prior to her discrimination claims and was pending before _____ the NLRB at the time of the filing of her action before the Commission. In addition, shortly after Doulamis filed her action, additional charges were filed by the Union, and the Board continued to exercise its jurisdiction over these claims. Federal courts seek to avoid needless conflict with state agencies and withhold relief by way of injunction where state remedies are available and adequate. Alabama Public _______________ Service Commission v. Southern Railroad Co., 341 U.S. 341 (1951). __________________ _____________________ But where Congress, acting within its constitutional authority, has vested a federal agency with exclusive jurisdiction over a subject matter and the intrusion of a state would result in a conflict of functions, the federal court may enjoin the state proceeding in order to preserve the federal right. American ________ Federation of Labor v. Watson, 327 U.S. 582, 593-95 (1946); ____________________ ______ -18- Bowles v. Willingham, 321 U.S. 503, 510-11 (1944); Public ______ __________ ______ Utilities Commission of Ohio v. United Fuel Gas Co., 317 U.S. _____________________________ ____________________ 456, 468-70 (1943). This case is similar to Freehold Cogeneration ______________________ Associates, LP v. Board of Regulatory Commissioners of New _______________ ____________________________________________ Jersey, 44 F.3d 1178 (3d Cir. 1995). In that case, Freehold ______ sought a declaratory judgment in the United States District Court for the District of New Jersey that the Board of Regulatory Commissioners of the State of New Jersey ("BRC") was preempted by the Federal Public Utility Regulatory Policies Act ("PURPA") from modifying the terms of a previously approved power purchase agreement between Freehold and Jersey Central Power and Light Company ("JCP&L"), a New Jersey public utility. Freehold also sought an order enjoining the ongoing BRC proceedings. The district court dismissed for lack of subject matter jurisdiction. On appeal, one of the arguments raised by JCP&L was that the federal court should abstain from resolving the merits of the case even if it was found to possess subject matter jurisdiction. The Third Circuit rejected the argument saying: [O]ur concern is with carrying out a federal statutory scheme promoting the development of alternative energy sources. The alleged intrusive action is not by the federal government, but, on the contrary, by a state regulatory agency. We conclude that abstention is not appropriate in this case and does not warrant any extended discussion. Freehold Cogeneration, 44 F.3d at 1187 n.6. As in Freehold, we _____________________ ________ are concerned here with carrying out a federal statutory scheme, -19- in this case one promoting the development of a uniform national labor policy. The alleged intrusive action is not by the federal government, but by the MCAD's purported regulation of conduct within the NLRB's jurisdiction. We note that in the particular context of this case, the application of Younger abstention would result in significant _______ prejudice to Chaulk, who entered into a comprehensive settlement agreement with the NLRB through which all unfair labor practice claims were resolved, subject to Chaulk's compliance with the conditions set forth therein, only to be faced with the prospect of having to defend its actions once again, this time before a state forum. Such an expansive interpretation of the abstention doctrine would have the effect of encouraging duplicative litigation, with the resultant waste of judicial and administrative resources, as well as the danger to federal-state relations that could result from conflicting adjudications. Under these circumstances, where a federal agency with primary jurisdiction over the controversy has already exercised said jurisdiction, it would be inconsistent with the above mentioned principles of comity and equal respect for the interests of both the federal and state government for a federal court to abstain on Younger grounds from deciding a claim _______ properly before it, in order to give way to a state administrative action filed after the federal proceedings are _____ underway. Put simply, comity works both ways. ______ _____ ____ ____ The Commission nevertheless urges us to extend the -20- application of Younger and its progeny to the circumstances of _______ this case. To this end, MCAD argues that the facts before us satisfy the relevant three part test set out by the Supreme Court in Middlesex, 457 U.S. at 432. As it is however, even an _________ analysis of the case within this framework leads us to the same conclusion. Abstention was improper in this case. We explain. A number of courts have held that Younger abstention is _______ inappropriate where a claim of preemption is "facially conclusive" or "readily apparent", because no significant state interests are served when it is clear that the state tribunal is acting beyond the lawful limits of its authority. Bud Antle, ___________ Inc. v. Barbosa, 35 F.3d 1355, 1365-66 (9th Cir. 1994), as ____ _______ amended by, 45 F.3d 1261, 1272-73 (9th Cir. 1994); Gartrell ________ Construction, Inc. v. Aubry, 940 F.2d 437, 441 (9th Cir. ___________________ _____ 1991)(citing Champion International Corp. v. Brown, 731 F.2d 1406 ____________________________ _____ (9th Cir. 1984); National R.R. Passenger Corp. v. Florida, 929 ______________________________ _______ F.2d 1532, 1537 n.12 (11th Cir. 1991)(citing Baggett v. _______ Department of Professional Registration, 717 F.2d 521, 524 (11th _______________________________________ Cir. 1983)); Southwestern Bell Tel. v. Ark. Public Service ________________________ _____________________ Commission, 824 F.2d 672, 673 (8th Cir. 1987); Kentucky W. Va. __________ _______________ Gas Co. v. Pennsylvania Pub. Util. Comm'n, 791 F.2d 1111, 1115 ________ _______________________________ (3d Cir. 1986). Chaulk asserts that the Commission is patently acting beyond its jurisdictional boundaries and therefore, no principle of comity precluded the district court from entertaining its claim of preemption on the merits. In response, the Commission cites the Supreme Court's decision in New Orleans ___________ -21- Public Service, Inc. v. Council of the City of New Orleans, 491 ____________________ ___________________________________ U.S. 350 (1989) ("NOPSI") for the proposition that the mere assertion of a substantial constitutional challenge to state action, such as an argument of federal preemption engenders, will not alone compel the exercise of federal jurisdiction. Whatever the merits of MCAD's assertion however, even the NOPSI decision _____ leaves open the possibility that a "facially conclusive" claim of preemption might render abstention inappropriate. Id. at 367. __ Consequently, we examine the merits of Chaulk's contention that abstention is also inappropriate because preemption is readily apparent in this context. We have explained above the particularities of Doulamis' claims before the Commission. She complains of incidents of interference with her union activities as a union ____ ___ _____ __________ _____ organizer. We have observed that the very same conduct provides _________ the factual basis for the unfair labor practice charges brought by the Union on her behalf. We have also highlighted the fact that the NLRB incorporated these charges into a complaint and notice of hearing claiming violations to sections 8(a)(1) and 8(a)(3) of the NLRA. As we have noted, her claims are fundamentally grounded in an assertion that the rights which her employer interfered with involve her union activity. _____ ________ Under these circumstances, were we to allow Doulamis' state claims to go forward by simply artfully pleading her claim of unfair labor practices as one motivated by a discriminatory animus because of her gender, we would be compromising the NLRB's -22- role as chief arbiter of labor disputes. Indeed, there are few unfair labor practices which could not be similarly repackaged. Similarly aggrieved individuals could use such an opening to bypass the NLRB merely by ascribing a myriad of discriminatory motives to the relevant conduct (i.e. age, race, religious belief, etc.), thereby creating a system of labor dispute adjudication parallel to the NLRB, leaving the state and federal courts to grapple piecemeal with issues Congress intended primarily for NLRB resolution. Faced with this particular factual scenario, we find that under the Garmon doctrine it is "readily apparent" that the ______ Commission is acting beyond its jurisdictional authority by entertaining Doulamis' complaint, for it is readily apparent that Chaulk's conduct at issue is at least arguably prohibited by, and thus subject to the NLRA. Accordingly, we hold that abstention was inappropriate and that the district court abused its discretion when it dismissed Chaulk's complaint on the basis of Younger abstention. _______ III. CONCLUSION III. CONCLUSION __________ In sum, pursuant to the Garmon preemption doctrine, we ______ find that Ms. Doulamis' claims are preempted by the NLRA, thereby depriving the MCAD of jurisdiction to entertain her action based on gender discrimination. In addition, we find that abstention was inappropriate in this case, as the principles of comity and of equal respect for state and federal functions weighed against such an abdication of federal jurisdiction over the present -23- controversy. Accordingly, Chaulk is entitled to injunctive relief, consistent with this opinion. Finally, with regard to MCAD's argument that the Eleventh Amendment bars Chaulk's claims against the Commission, we point out that the Supreme Court has recognized that the Eleventh Amendment does not preclude properly pleaded actions against state officials when the relief sought is prospective and equitable in nature. See Ex Parte Young, 209 U.S. 123 (1908); ___ _______________ Will v. Michigan Department of State Police, 491 U.S. 58 (1989). ____ ___________________________________ We therefore reverse the judgment of the district court and remand the case, so that Chaulk may address any pleading deficiencies that currently preclude the continued prosecution of its petition for relief. Reversed and remanded. _____________________ LYNCH, Circuit Judge, dissenting. Because Congress has LYNCH, Circuit Judge, dissenting. _____________ clearly expressed its intent to allow state anti-discrimination statutes to operate in areas such as this that may overlap with the National Labor Relations Act ("NLRA"), Petrina Doulamis/Sullivan's action is not, I believe, preempted. Because the federal courts are being asked to enjoin the Massachusetts Commission Against Discrimination ("MCAD") from hearing an ongoing gender discrimination action over which the state agency plainly has jurisdiction, I believe that abstention is appropriate. I respectfully dissent. Under San Diego Building Trades Council, Millmen's ________________________________________________ Union, Local 2020 v. Garmon, 359 U.S. 236 (1959), and its ___________________ ______ -24- progeny, and in light of the clear congressional mandate under Title VII, 42 U.S.C.A. 2000e to e-17 (West 1994 & Supp. 1995), that state anti-discrimination statutes have authority over claims for discrimination coextensive with Title VII, Doulamis' MCAD claim coexists with and is not displaced by the federal labor laws. The employer's defense here presents no "facially conclusive" claim for preemption. See New Orleans Public ___ ____________________ Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, _____________ _______________________________ 367 (1989). Garmon preemption is a question over which the state ______ courts have concurrent jurisdiction and Chaulk Services, Inc. ("Chaulk") will have a full and fair opportunity to present the question to the Massachusetts courts. In my view, abstention is required under Younger v. Harris, 401 U.S. 37 (1971). _______ ______ -25- I. Garmon says that "[w]hen an activity is arguably ______ subject to 7 or 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board ["NLRB"] if the danger of state interference with national policy is to be averted." Garmon, 359 ______ U.S. at 245.6 Garmon also says that this principle is not ______ absolute. There is no need to defer to the NLRB where the conduct at issue is of "peripheral concern" to federal labor policy or where the state regulated activities touch "interests . . . deeply rooted in local feeling and responsibility." Id. at ___ 243-44. The Massachusetts anti-discrimination statute touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [courts cannot] infer that Congress [has] deprived the States of the power to act." Garmon, 359 U.S. at 244. This is so whether ______ or not invidious discrimination in employment can be described as being of "peripheral concern" to the NLRA. Cf. Massachusetts ___ _____________ Electric Co. v. Massachusetts Commission Against Discrimination, ____________ ________________________________________________ 375 Mass. 160, 174 (1978) (employment discrimination of peripheral concern to the NLRA); Walker Mfg. Co. v. Industrial ________________ __________ Commission, 27 Wis.2d 669, 681 (1965) (age discrimination of __________ peripheral concern to Labor Management Relations Act).  ____________________ 6 Sex discrimination is not specifically addressed in the NLRA and so it is not "clearly prohibited" by 8 or "clearly protected" by 7 of the NLRA. -26- Originally enacted in 1946, the Massachusetts anti-discrimination statute, Mass. Gen. L. ch. 151B, 1-10 (1994), is eighteen years older than Title VII. See 1946 Mass. Acts 368. It ___ regulates conduct in employment in order to carry out the Commonwealth's interest in ensuring that its workplaces are free from particular categories of discrimination. It represents no less an exercise of Massachusetts' police power than building codes or fire regulations. The interests it protects are at least as weighty as the interests sought to be vindicated in actions the Supreme Court has specifically held not preempted by Garmon. See Belknap, Inc. v. Hale, 463 U.S. 491 (1983) (breach ______ ___ ______________ ____ of contract and misrepresentation actions by replacement workers); Farmer v. United Brotherhood of Carpenters and Joiners ______ _____________________________________________ of America, Local 25, 430 U.S. 290 (1977) (infliction of _______________________ emotional distress); Linn v. United Plant Guard Workers of ____ ________________________________ America, Local 114, 383 U.S. 53 (1966) (libel). __________________ That chapter 151B touches interests deeply rooted in local feeling and responsibility is not disputed. Rather, the majority asserts that Doulamis' claim is not really a sex discrimination claim, describing Doulamis' claim as the product of "artful[] pleading." With deference, I believe the record establishes that Doulamis' claim is clearly one for sex discrimination and has been treated as such by the MCAD.7  ____________________ 7 Doulamis' claim cannot be preempted simply because the case arises from a labor dispute. The Supreme Court has squarely held that Garmon preemption does not turn on whether a claim arises in ______ the context of a labor dispute. Linn, 383 U.S. at 63 ("Nor ____ should the fact that defamation arises during a labor dispute -27- On the facts as alleged, Doulamis has stated a claim before the MCAD for sex discrimination under chapter 151B. She asserts, inter alia: _____ ____ On November 10, 1993, I was harassed about my union activity. I believe the reason is because I am a female. The males who are also involved are not being harassed. Therefore, I charge Respondent with unlawful discrimination against me, in violation of M.G.L. Chapter 151B . . . and Title VII . . . . I believe that I am being single[d] out by the Respondent because I am a female. There are numerous other male union organizers who are not being harassed. That Doulamis asserts a bona fide sex discrimination claim is buttressed by the underlying papers in the pleadings submitted by Chaulk to the district court. Doulamis was apparently a well-respected employee and was featured in Chaulk's publicity materials. From the time she began working at Chaulk in 1990 until the autumn of 1993, Doulamis received no written warnings and no patient complaints. In the middle of 1993, the International Association of EMTs and Paramedics began a union organizing campaign at Chaulk. Although not initially involved, Doulamis became involved in the campaign during the fall of 1993, when she and Eric Burgess, a male Chaulk employee, wrote a letter to the president of Chaulk's parent company calling for organization of a union. On November 10, 1993, Doulamis was called from a training session to meet with the CEO of Chaulk,  ____________________ give the Board exclusive jurisdiction to remedy its consequences.").  -28- Nicholas O'Neil, and a vice president, Joseph Gilmore. The two men told Doulamis at that meeting that she was "pretty" and that they believed that the other employees at Chaulk would listen to her because she was "pretty." They asked her to become a non- union advocate, saying that her physical appearance would persuade other employees to vote against the union. She refused. Shortly thereafter, Doulamis began receiving a series of harassing warnings from Chaulk management about her conduct on the job and her union activities. Burgess, who had co-authored the pro-union letter with Doulamis, did not receive such harassment. Doulamis believed that she was being singled out for punishment for her union activities because of her sex. The ___________________ heart of her complaint before the MCAD was that she was being harassed for her union activities while male union organizers -- including one who had co-authored the letter precipitating the harassment -- were not (or at least were not until after Doulamis filed her complaint with the MCAD). This allegation states a prima facie claim of sex discrimination under chapter 151B. See ___ Ramsdell v. Western Massachusetts Bus Lines, Inc., 415 Mass. 673, ________ _____________________________________ 679 (1993); see also Blare v. Husky Injection Molding Sys. ___ ____ _____ _______________________________ Boston, Inc., 419 Mass. 437 (1995).  ____________ Under the facts of this case Doulamis could allege two distinct wrongs -- a claim for unfair labor practices and a claim for sex discrimination. Characterizing Doulamis' latter claim as artful pleading assumes away the difficult legal question raised -29- by Doulamis' case and squarely presented in the briefs: whether a sex discrimination claim based on state law is preempted if it arises out of a course of events that also may give rise to an unfair labor practice charge. The Supreme Court in Sears, Roebuck & Co. v. San Diego ____________________ _________ County District Council of Carpenters, 436 U.S. 180 (1978), held ______________________________________ that even if a case may come within the scope of the Garmon ______ preemption doctrine when applied in a "mechanical fashion," id. ___ at 188, there is still no preemption over conduct arguably prohibited by the NLRA unless the controversy before the state court is identical to the dispute that could have been presented _________ under the NLRB. Id. at 197.8 Doulamis' MCAD claim is not ___  ____________________ 8 At issue in Sears was conduct that could be analyzed in two _____ distinct ways. The conduct was both "arguably protected" and "arguably prohibited" by the NLRA. The Court drew a distinction between those two categories of conduct (although in that case, the same conduct happened to qualify as both) and imposed two distinct lines of analysis. If the activity at issue is "arguably protected," a finding of preemption is required where an aggrieved party has a reasonable opportunity of invoking the NLRB jurisdiction or of inducing his adversary to do so. Id. at ___ 207. If an activity is "arguably prohibited," state jurisdiction is preempted only if the issues presented to the state court are identical to those that could be presented to the NLRB. The latter rubric leaves much more room for state regulation. Id. at ___ 200. Since sex discrimination is clearly not protected by the NLRA, the conduct at issue in this case falls under the more generous "arguably prohibited" rubric. The majority appears to apply to this case criteria that Sears _____ made applicable to "arguably protected" conduct. For example, in determining that the controversy here is identical to that which could have been put to the NLRB the majority says, "[p]lainly this is not a case where the NLRB declined to exercise its lawful jurisdiction over a labor controversy, or where the NLRB's actual exercise of jurisdiction remains a matter of speculation." Majority Op. at typescript 12; see also Majority Op. at ___ ____ typescript 10 n.4. While this consideration is important to cases involving "arguably protected" conduct, it is not to -30- identical to that which could have been heard by the NLRB. To make out her claim on her chapter 151B action Doulamis needs to show (1) a prima facie case of discrimination and (2) "either that the employer's articulated reasons are a pretext or by direct evidence that the actual motivation was discrimination." Blare, 419 Mass. at 444. The action before the _____ NLRB could not have turned on such an inquiry. Further, the terms of the employer's settlement agreement with the NLRB do not establish that Doulamis' claim before the MCAD is not a bona fide sex discrimination claim.9 On the alleged facts of this case -- where Doulamis and Burgess were engaged in the same activity (co-authoring the letter) -- the MCAD will not have to decide as a matter of law whether one of the two was engaged in union activity, while the other was not. In other words, insofar as Doulamis and Burgess were doing the same thing (yet only one was harassed), the  ____________________ "arguably prohibited" conduct. 9 There also seems to be an absence of record support for either the proposition that the sex discrimination action was addressed before the NLRB or the proposition that the settlement is "comprehensive." The settlement agreement, dated March 22, 1995, does not refer to alleged sex discrimination. Also, according to its terms, the agreement applies "only [to] the allegations in the above captioned cases and does not constitute a settlement of any other cases or matters." The "above captioned cases" are docket numbers "1-CA-31196, 31945(2), 32267, 32378, 32504, 32534, 32645, 32661." Only one of those docket numbers, 1-CA-31196, filed December 9, 1993, involves Doulamis. Apparently not included in the settlement are the other two claims that were, according to Chaulk, made by Doulamis: docket numbers 1-CA- 31157, filed November 29, 1993, and 1-CA-31181-2, filed December 6, 1993. -31- question of whether the activities were protected union activities cancels out of the equation. This is why the MCAD, when presented with Chaulk's claim of preemption, said: In the Complainant's presentation of her discrimination case before this Commission, the 'merits' of the underlying labor dispute need not be resolved. It is not necessary for this Commission to find that the Respondent did, in fact, interfere with the Complainant's efforts to organize union activities; nor is it necessary for a determination to be made regarding the Respondent's anti-union animus, if one should exist. Rather, the Complainant must show that she was treated dissimilarly by the Respondent, and that the impetus for that dissimilar treatment was due to her gender. It is neither the role nor the goal of this Commission to assess the catalyst of the Respondent's actions. It is, however, this Commission's purpose to ensure that such actions are not gender motivated. In the present case, the Commission may decide the issue in dispute without making a threshold determination of whether the employer had interfered with the employee's union activities. It need only determine whether the treatment the Complainant received, rightly or wrongly, was different from that of her male counterparts and motivated by her gender. It is in this context that the MCAD's interrogatory must be understood. While it is true that the MCAD has asked Chaulk questions relating to union organizing activities (and has perhaps shown insufficient sensitivity to the possible jurisdictional problem), it has done so for the purpose of determining factually whether Doulamis was treated differently -32- than men for doing the same thing, and not to define legally what is or is not a union activity under the NLRA. As the MCAD has recognized, Doulamis' sex discrimination claim exists independently of any labor law claim. Chaulk's conduct was not wrongful only by virtue of, or with reference to, the labor laws. Cf. Tamburello v. Comm-Tract Corporation, No. 95-1295, slip op. ___ __________ ______________________ at 10-11 (1st Cir. October 2, 1995) (RICO claim preempted under Garmon where reviewing court would be forced to decide whether ______ some portion of defendant's conduct violated federal labor laws to determine whether the plaintiff had established a RICO predicate act).10 The Sears inquiry suggests that the MCAD claim does not _____ fall within the scope of Garmon preemption. There is, however, ______ an even more compelling consideration that yields the same conclusion. Of paramount importance in any preemption inquiry, including one under Garmon, is congressional intent. See ______ ___ Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747 ___________________________ _____________  ____________________ 10 Significantly, particularly with respect to the Younger _______ issues raised in Part II, any issue concerning whether Doulamis was or was not engaged in union activity will arise in this case, if at all, by way of Chaulk's potential defense to the action -- that Doulamis was treated differently than Burgess and other male organizers because the male organizers were engaged in protected union activity, while Doulamis was not. The Supreme Court has said in the analogous context of 301 preemption under the Labor Management Relations Act that a defense of preemption is not even a sufficient basis for removal of the action to federal court. See Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987) ("[A] ___ ________________ ________ defendant cannot, merely by injecting a federal question into an _________ action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.") (emphasis in original). -33- (1985) (stating, in discussing NLRA preemption, including Garmon ______ preemption, that "as in any preemption analysis, [t]he purpose of Congress is the ultimate touchstone") (internal quotations omitted). If Congress has clearly evidenced its intent one way or the other on the question of whether states may regulate an area of conduct, federal courts must follow it. Congress has clearly evidenced its belief that state anti-discrimination statutes do not unduly interfere with federal labor policy. Doulamis' claims not only come under chapter 151B but also come within the scope of Title VII, 42 U.S.C.A. 2000e to e-17 (West 1994 & Supp. 1995), and are within the jurisdiction of the Equal Employment Opportunity Commission ("EEOC"). She has in fact alleged a violation of Title VII and has indicated in her MCAD complaint that she wishes to have her charges filed with the EEOC. The Supreme Court has said that the NLRA and Title VII provide concurrent remedies. See Alexander v. Gardner-Denver ___ _________ ______________ Co., 415 U.S. 36, 47-48 (1974); see also Beverly v. Lone Star ___ ___ ____ _______ _________ Lead Construction Corp., 437 F.2d 1136, 1140 n.22 (5th Cir. _________________________ 1971); cf. Britt v. Grocers Supply Co., Inc., 978 F.2d 1441, ___ _____ _________________________ 1447 (5th Cir. 1992) ("[W]e have held that claims under Title VII are not preempted by the NLRA. [Our] cases hold that a remedy is available under both the NLRA and Title VII and recognize concurrent jurisdiction between Title VII and the NLRA." (footnote omitted)), cert. denied, 113 S. Ct. 2929 (1993); Morgan _____ ______ ______ v. Massachusetts General Hosp., 901 F.2d 186, 194 (1st Cir. 1990) ___________________________ -34- ("Clearly, if an employee has engaged in expression against employer policies, even within the context of union activities, which violate the Civil Rights Act, such as discriminatory treatment of minorities or sexual harassment, and the employee alleges discharge for that expression, section 704(a) [of the Civil Rights Act] would be implicated for the narrow expression- related claims.").11 Thus, even accepting the majority's view that the factual basis for the sex discrimination claim provides the same basis for the unfair employment practice claim and that the sex discrimination claim is identical to that before the NLRB, Doulamis is still entitled to pursue her claim under Title VII before the EEOC. See Alexander, 415 U.S. at 47-48. Since the ___ _________ conduct prohibited by Title VII is nearly the same as that proscribed by chapter 151B and Congress intended Title VII to provide a concurrent remedy to the NLRA in areas of overlap, it would be difficult to impute to Congress any hostility to the enforcement of chapter 151B with respect to areas of potential overlap with the NLRA. There is, however, no need to rely on such a general proposition in this case because Congress has affirmatively stated in the language and through the structure of Title VII itself that state anti-discrimination laws may provide a remedy that overlaps with the NLRA. Not only did Congress affirmatively  ____________________ 11 It is clear also that jurisdiction is concurrent between the EEOC and NLRB over claims that may fall within each statute. See ___ Beverly, 437 F.2d at 1140, n.22. _______ -35- preserve the operation of state anti-discrimination laws in Title VII, see 42 U.S.C.A. 2000e-7, but it made the state anti- ___ discrimination statutes an integral component of the Title VII enforcement structure. See 42 U.S.C.A. 2000e-5(c) ("section ___ 706(c)"). Section 706(c) of Title VII explicitly provides that in states like Massachusetts (which have anti-discrimination statutes and an agency charged with enforcing the state statute) jurisdiction in the state administrative agency is exclusive for _________ the first 60 days after a claim is filed. See 42 U.S.C.A.  ___ 2000e-5(c). The importance of state anti-discrimination statutes in the enforcement scheme of Title VII was of major concern to Congress in enacting Title VII. Isaac v. Harvard University, 769 _____ __________________ F.2d 817, 822 (1st Cir. 1985) ("The issue reflected in section 706(c), the relationship between federal and state remedies for employment discrimination, received much attention throughout the legislative process."). The legislative history shows that section 706(c) of Title VII was enacted "'to keep primary, exclusive jurisdiction in the hands of the State commissions for a sufficient period of time to let them work out their own problems at the local level.'" Id. (quoting 110 Cong. Rec. 13087 ___ (1964) (comments of Senator Dirksen)).12 It was critical to  ____________________ 12 The EEOC has recognized the importance of allowing state anti-discrimination statutes to operate in order to effectuate Congress' purposes for Title VII. See, e.g., 29 C.F.R. ___ ____ 1601.13(a)(3)(i) (1995) ("In order to give full weight to the policy of section 706(c) of title VII, which affords State and local fair employment practice ["FEP"] agencies that come within the provisions of that section an opportunity to remedy alleged -36- the passage of Title VII that the federal government initially defer to the states in matters involving discrimination. Moreover, Congress did not devise this enforcement structure simply for administrative convenience (i.e., to avoid duplication of effort). As this court has previously said, section 706(c) "was first, and foremost, a statute of deference." Isaac, 769 _____ F.2d at 824; see also id. at 824 n.9 (citing Oscar Mayer & Co. v. ___ ____ ___ _________________ Evans, 441 U.S. 750 (1979) and stating that "[t]he Court's _____ implicit message appears to be that deference, and not duplication, was at the heart of section 706(c)").13 And Congress clearly had the NLRA in mind when it mandated this principle of deference to the state anti-discrimination statutes. See Alexander, 415 U.S. at 48 n.9 (quoting 110 Cong. Rec. 7207 ___ _________ (1964) (where Senator Joseph Clark, one of the sponsors of the bill, introduced an interpretive memorandum specifically mentioning the relationship between Title VII and the NLRA)). If Congress believed that state anti-discrimination statutes could not regulate coextensively with Title VII, then perhaps preemption would be appropriate. But that is not the case. Nothing in Title VII says that state anti-discrimination  ____________________ discrimination concurrently regulated by title VII or the ADA and State or local law, the Commission adopts the following procedures with respect to allegations of discrimination filed with the Commission."). 13 Under the EEOC's regulations the MCAD is not only a designated FEP agency, see 29 C.F.R. 1601.74 (1995), but it is ___ a certified designated FEP agency, see 1601.80 (1995), to which _________ ___ the EEOC gives a higher level of deference than it otherwise does to designated FEPs. See 29 C.F.R. 1601.75(a) (1995). ___ -37- statutes cannot apply coextensively with Title VII. More significantly, there clearly is nothing that says that the exclusive jurisdiction of state administrative agencies under section 706(c) is limited to cases under Title VII that do not overlap with the NLRA.  It is possible to draw at least two conclusions relevant to congressional intent from Title VII. First, Congress affirmatively intended that state anti-discrimination statutes would operate to regulate conduct covered by Title VII to the same extent as Title VII itself and, thus, in areas that might also be covered by the NLRA. Second, Congress could not have intended to eliminate the operation of state anti-discrimination statutes over claims covered by Title VII because that would actively impair the operation of Title VII and frustrate the ______ enforcement scheme Congress envisioned. Not even ERISA preemption, which is arguably much broader than Garmon ______ preemption, see Metropolitan Life Ins. Co. v. Massachusetts, 471 ___ ___________________________ _____________ U.S. 724, 747 (1985) (distinguishing ERISA preemption from NLRA preemption by stating that ERISA preemption is statutorily mandated), allows preemption where it would impair the operation of Title VII. See Shaw v. Delta Airlines, Inc., 463 U.S. 85, 102 ___ ____ ____________________ (1983) (where ERISA preemption of a state anti-discrimination statute would impair the operation of Title VII, there is no preemption). The reasonable conclusion is that Congress intended to allow state anti-discrimination statutes to overlap with the NLRA. -38- The Supreme Court's decision in Alexander v. Gardner- _________ ________ Denver Co., 415 U.S. 36 (1974), reinforces this conclusion. In __________ Alexander the Court was called upon to determine the relationship _________ between the federal courts and the grievance-arbitration machinery of collective bargaining agreements in the resolution and enforcement of an individual's rights under Title VII. There an employee had a claim for discrimination that was clearly covered by a collective bargaining agreement.14 At issue was whether the employee's remedies provided in the collective bargaining agreement (and subject to arbitration) precluded a suit in federal court based on Title VII.15 The Court unanimously held that it did not, saying: [L]egislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination. In the Civil Rights Act of 1964, 42 U.S.C. 2000a et __ seq., Congress indicated that it ____ considered the policy against discrimination to be of the "highest priority." Newman v. Piggie Park ______ ____________ Enterprises, [390 U.S. 400, 402 (1968)]. ___________ Consistent with this view, Title VII provides for consideration of employment- discrimination claims in several forums. See 42 U.S.C. 2000e-5(b) (1970 ed., ___ Supp. II) (EEOC); 42 U.S.C. 2000e-5(c) (1970 ed., Supp. II) (state and local ________________ agencies); 42 U.S.C. 2000e-5(f) (1970 ________ ed., Supp. II) (federal courts). And, in general, submission of a claim to one  ____________________ 14 The right to bargain collectively is, of course, an NLRA conferred right. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, ____________________ _____ 213 n.8 (1985). 15 In Alexander, as here, there had been no waiver of statutory _________ rights. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. ___ ______ ______________________________ 20, 35 (1991). -39- forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other _____ applicable state and federal statutes. _____________________________________ Alexander, 415 U.S. at 47-48 (emphasis supplied; footnotes _________ omitted);16 see also Brown v. Hotel and Restaurant Employees ___ ____ _____ ________________________________ and Bartenders Intern. Union, Local 54, 468 U.S. 491 (1984).17 ______________________________________  ____________________ 16 The Court has applied a similar analysis in analogous situations. See Lingle v. Norge Division of Magic Chef, Inc., ___ ______ ___________________________________ 486 U.S. 399, 412 (1988) (suggesting that " 301 does not preempt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge." (citation omitted)); Colorado Anti-Discrimination ____________________________ Commission v. Continental Air Lines, Inc., 372 U.S. 714, 724 __________ ____________________________ (1963) (rejecting a claim that a state anti-discrimination law was preempted by the Railway Labor Act, which is similar to the National Labor Relations Act). 17 At issue in Brown was whether 86 and 93 of the New Jersey _____ Casino Control Act (which set qualifications for union officials) were preempted by 7 of the NLRA. It was argued that the New Jersey statute was preempted because it interfered with the right protected under 7 of employees to choose their union officials. The Supreme Court held that 7 did not completely preempt 86 and 93 of the New Jersey statute. In the Court's view, Congress had, through the passage of the Labor-Management Reporting and Disclosure Act ("LMRDA"), disclaimed any intent to pre-empt all state regulation which touched upon the specific right of employees to decide which individuals will serve as officials of their bargaining representatives. The LMRDA had imposed, in  504(a), federal qualification standards for union representatives. Because the LMRDA affirmatively preserved the operation of state laws in 603 and made 504(a) itself dependent in part on state laws for its enforcement, the Court held that state laws could impose their own similar qualification standards on union officials. Id. at 509. ___ Brown is highly instructive on the type of approach required _____ for this case. In Brown, the Court focussed on the indicia of _____ congressional intent that could be found not just in the NLRA, but also in a parallel federal statute. The parallel federal statute there specifically reserved a place for state regulation over the conduct coming within its scope. While the LMRDA does -40- National labor relations policy does not begin and end with the NLRA. Title VII is as much a part of the network of labor relations law as is the NLRA. Where Congress has so clearly indicated that state anti-discrimination laws are to operate hand in hand with Title VII (indeed, for a limited period to the exclusion of Title VII) it is difficult to conclude Congress intended preemption under the circumstances here. In the words of Garmon, preemption should not be found absent ______ "compelling congressional direction." Garmon, 359 U.S. at 244. ______ Here, all the congressional direction is to the effect that state anti-discrimination statutes may supplement federal laws, including federal labor laws, and Garmon preemption is therefore ______ inappropriate. II. Having stated my disagreement with the view that Doulamis' sex discrimination claim is preempted by the NLRA, I consider what perhaps may be a conceptually prior issue, the issue of abstention. By seeking an injunction against the state proceedings, Chaulk has effectively asked the federal court to enjoin the state courts from deciding the Garmon issue. Thus, ______ the potentially dispositive question, apart from whether Garmon ______ preemption is appropriate, is whether this federal court should  ____________________ not bear on this case, Title VII does, and Title VII makes clear that Congress intended federal and state regulation of discrimination to overlap. The differences between Brown and _____ this case do not affect the central instruction of Brown: that a _____ federal court must defer to congressional intent in making any preemption analysis, even one involving the NLRA and even if it is expressed in another federal statute. -41- bar the state fair employment agency from hearing this claim and so bar Massachusetts state courts from deciding the Garmon issue ______ themselves, or, to the contrary, abstain from decision and allow the state agency and courts to proceed. As with the preemption issue, this issue is difficult, but on balance I would hold here under Younger v. Harris, 401 U.S. 37 (1971), and its progeny, _______ ______ that abstention is appropriate. Younger prevents interference with pending state _______ administrative proceedings if they are of a judicial nature, implicate an important state interest, and provide the federal plaintiff an adequate opportunity to litigate his constitutional claim. Ohio Civil Rights Commission v. Dayton Christian Schools, ____________________________ _________________________ Inc., 477 U.S. 619, 627 (1985). Although Chaulk claims that ____ Younger abstention is a principle of "discretionary deference," _______ the Supreme Court has stated that where a case falls within the Younger parameters, a district court has no discretion to provide _______ injunctive relief and must abstain. See Colorado River Water ___ _____________________ Conservation District v. United States, 424 U.S. 800, 816 n.22 _____________________ _____________ (1976) ("Where a case is properly within [the Younger] category _______ of cases, there is no discretion to grant injunctive relief."); see also Sun Refining & Marketing Co. v. Brennan, 921 F.2d 635, ___ ____ _____________________________ _______ 639 (6th Cir. 1990) ("[U]nlike other forms of abstention, when a case is properly within the Younger category of cases, there is _______ no discretion on the part of the federal court to grant injunctive relief."); Seneca-Cayuga Tribe v. State ex rel. ____________________ _______________ Thompson, 874 F.2d 709, 711 (10th Cir. 1989) (Younger abstention ________ _______ -42- not discretionary once conditions are met, absent extraordinary circumstances that render a state court unable to give litigants a full and fair hearing on their federal claims).18 There is no question that the MCAD proceedings were ongoing at the time Chaulk's district court complaint was filed, see Bettencourt v. Board of Registration in Medicine, 904 F.2d ___ ___________ __________________________________ 772, 777 (1st Cir. 1990) (in determining interference "the proper point of reference is the date plaintiff filed his federal complaint"), and that the proceedings are judicial in nature. See Dayton Christian Schools, 477 U.S. at 629 (finding Ohio Civil ___ ________________________ Rights Commission proceedings sufficiently judicial in nature). The significant questions here are whether the state interest in deciding sex discrimination claims is important and whether there will be an adequate opportunity for Chaulk to raise the Garmon ______ preemption question in the Massachusetts state forum. The Supreme Court has said that remedying sex discrimination is a sufficiently important state interest to trigger Younger. See Dayton Christian Schools, 477 U.S. at 628 _______ ___ ________________________ ("We have no doubt that the elimination of prohibited sex discrimination is a sufficiently important state interest to bring the present case within the ambit of [Younger and its _______ progeny]."). Although Chaulk has suggested that there can be no significant state interest in this case because it is preempted,  ____________________ 18 The majority quarrels with this proposition stating that the Colorado River case was discussing criminal cases. Colorado _______________ ________ River, however, was discussing Younger abstention and Younger _____ _______ _______ clearly applies to non-criminal state administrative proceedings. See Dayton Christian Schools, 477 U.S. at 627 & n.2.  ___ ________________________ -43- such an argument, I believe, is most likely foreclosed by New ___ Orleans Public Service, Inc. v. Council of City of New Orleans, ____________________________ _______________________________ 491 U.S. 350, 365 (1989) ("NOPSI"). In NOPSI the Court said that _____ _____ in determining the importance of the state interest courts should "not look narrowly to its interest in the outcome of the particular case -- which could arguably be offset by a substantial federal interest in the opposite outcome." Id. ___ Courts rather must look to the "importance of the generic proceedings to the State." Id. (citing Dayton Christian ___ _________________ Schools). As Dayton Christian Schools made explicit, _______ ____________________________ Massachusetts has a legitimate and important state interest in preventing sex discrimination. Thus the important state interest prong of Younger is satisfied in this case. _______ Where there is an important state interest, the Supreme Court has noted that a federal court should abstain unless state law clearly bars the interposition of the federal plaintiff's constitutional claim. Middlesex County Ethics Committee v. ___________________________________ Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Here, we have ______________________ no reason to doubt that the Massachusetts state courts will provide Chaulk with a full and fair opportunity to raise the Garmon preemption question. Chaulk raised the preemption ______ argument before the MCAD and will have a further opportunity to pursue it before the Massachusetts appellate courts. Dayton ______ Christian Schools, 477 U.S. at 629 ("[I]t is sufficient . . . _________________ that constitutional claims may be raised in state-court judicial review of the administrative proceeding.") (citation omitted). -44- If federal law barred the Massachusetts state courts from deciding the Garmon preemption question, then the "adequate ______ opportunity" prong would not be met. Indeed such a proposition appears to be at the heart of Chaulk's argument. Chaulk argues: "[W]here conduct is arguably protected or prohibited by the NLRA, jurisdiction over that conduct is preempted in the labor context and is exclusively federal. The determination of whether the __________________________________ case arguably falls within the preempted field is also to be made _________________________________________________________________ by the federal courts, not State courts or State tribunals" ________________________________________________________________ (emphasis supplied). But that proposition is untenable and inconsistent with the Supreme Court's case law. Although state courts may be deprived of jurisdiction to decide a case once it is preempted ____ under Garmon, they are not deprived of jurisdiction to decide ______ whether a case is so preempted. State courts have concurrent _______ jurisdiction to decide federal preemption issues. See Chick Kam ___ _________ Choo v. Exxon Corp., 486 U.S. 140, 149-50 (1988) ("[W]hen a state ____ ___________ proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court."); see also Turnbow v. Pacific Mut. Life Ins. Co., ___ ____ _______ ___________________________ 934 F.2d 1100, 1103 (9th Cir. 1991) (no jurisdictional bar to state court deciding ERISA preemption question); Sun Refining & ______________ Marketing Co. v. Brennan, 921 F.2d 635, 641 (6th Cir. 1990) ______________ _______ (discussing possibility of Younger abstention question in _______ situation involving state action that was arguably subject to the exclusive jurisdiction of Occupational Safety and Health -45- Administration ("OSHA") and stating, "it is undisputed that concurrent jurisdiction exists in the Ohio state courts to decide the federal pre-emption issue"). Garmon preemption is no exception to this principle. ______ Cf. International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 ___ _____________________________________________ _____ U.S. 380, 393 (1985) ("when a claim of Garmon preemption is ______ raised [in state court], it must be considered and resolved by _______________________________________ the state court" (emphasis supplied)). Because the Massachusetts _______________ state courts have concurrent jurisdiction to decide the Garmon ______ preemption issue, Chaulk will have an adequate opportunity to raise its Garmon preemption claim in the Massachusetts courts, ______ and thus the "adequate opportunity" prong of Younger is also met _______ here. Perhaps recognizing that Younger applies to this case, _______ Chaulk has argued that preemption cases should be treated differently than typical Younger abstention cases. It says that _______ "[t]he real issue in this case is whether a doctrine of comity should be applied in a Garmon preemption case." It argues that ______ treating this case under Younger "confuses two federal concepts _______ which are rooted in very different soil"; and that while Younger _______ "is predicated upon discretionary deference by the federal government to fundamental State interests," preemption "is mandatory and arises under the Constitution, specifically, the Supremacy Clause." According to Chaulk "[t]o elevate the equitable doctrine of abstention over the Constitutional doctrine of preemption would truly be to elevate form over substance." -46- Whatever the merits of Chaulk's argument in theory, the Supreme Court has apparently rejected it. In NOPSI the Court _____ said that preemption issues do not involve a greater federal interest than other constitutional challenges: There is no greater federal interest in enforcing the supremacy of federal statutes than in enforcing the supremacy of explicit constitutional guarantees, and constitutional challenges to state action, no less than pre-emption-based challenges, call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action. Yet it is clear that the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction. . . . [P]reemption-based challenges merit a similar focus . . . . Id. at 365. Thus, courts are to analyze Younger abstention cases ___ _______ involving preemption claims no differently than any other Younger _______ abstention case, see Sun Refining, 921 F.2d at 639, and even a ___ ____________ substantial claim of federal preemption is not sufficient to overcome Younger. See NOPSI, 491 U.S. at 365-66.19 _______ ___ _____  ____________________ 19 A distinction exists between preemption involving a choice of forum and preemption involving a choice of law. Cf. Violette v. ___ ________ Smith & Nephew Dyonics, Inc., 62 F.3d 8, 11 (1st Cir. 1995) ______________________________ (choice of forum preemption is jurisdictional and cannot be waived, while choice of law is not and may be waived). The argument might be made that because Garmon involves choice of ______ forum preemption there is a greater federal interest to protect than in a case involving choice of law and that, accordingly, abstention here might not be appropriate here even if abstention for choice of law preemption would be. NOPSI, however, says that _____ the federal interest is not to be weighed against the state interest. See Sun Refining, 921 F.2d at 641. Thus even if the ___ ____________ federal interest in Garmon preemption is weightier than in choice ______ of law preemption cases, that consideration does not affect the Younger inquiry; abstention is appropriate as long as an _______ important state interest is identified and the other requirements are met. See Middlesex County, 457 U.S. at 431-32; Sun ___ ________________ ___ -47- The exception to Younger that provides that abstention _______ may be improper where the plaintiff might suffer irreparable injury absent equitable relief is not applicable here. A sufficient risk of irreparable injury may exist where the challenged state statute is "flagrantly and patently violative of express constitutional prohibitions. . . ." Younger, 401 U.S. at _______ 53-54. But chapter 151B is hardly flagrantly unconstitutional and, given the complexities of the preemption question, it is difficult to describe the MCAD's actions as flagrantly or patently violative of the Garmon preemption principle. ______ Further, although the Supreme Court in NOPSI left open _____ the question of whether a "facially conclusive" claim for preemption might fall within the exception to Younger, see NOPSI, _______ ___ _____ 491 U.S. at 367, the preemption claim here is not facially conclusive. For Chaulk's preemption claim to be facially conclusive the federal courts must be able to determine the state action is preempted "without further factual inquiry." Id. ___ Chaulk cannot meet this standard. The MCAD has not sought directly to regulate unfair labor practices nor has it questioned the authority of the NLRB to adjudicate the unfair labor practices claim. Cf. NOPSI, 491 ___ _____ U.S. at 367. It has in fact said that "the issue of union interference is properly left to the provinces of the NLRB." Neither has it challenged the non-admission settlement agreement that Chaulk has entered, nor does it appear that the MCAD action  ____________________ Refining, 921 F.2d at 641.  ________ -48- will undermine that agreement.20 Even if there were reason to doubt whether Doulamis has a bona fide claim for sex discrimination or whether the MCAD should adjudicate the dispute, it would be impossible "conclusively [to] say [the MCAD] is wrong without further factual inquiry -- and what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination." NOPSI, 491 _____ U.S. at 367.21  Finally, the fact that the union filed a complaint with the NLRB before Doulamis filed her complaint before the MCAD does not resolve the matter.22 To begin with, Chaulk never raised  ____________________ 20 There is nothing in the record to show that the NLRB even considered Doulamis' claims for sex discrimination in the context of the unfair labor practice charges. Moreover, the settlement agreement itself "does not preclude persons from filing charges, the General Counsel from prosecuting complaints, or the Board and the courts from finding violations with respect to matters which __________ precede the date of the approval of this Agreement regardless of whether such matters are known to the General Counsel or are readily discoverable" (emphasis supplied).  21 There may be situations in which the preemption claim could be facially conclusive and abstention would not be appropriate. For example, this case would be viewed quite differently had Doulamis alleged before the MCAD that the discrimination Chaulk engaged in was simply based on her potential affiliation in the union, as opposed to her gender. In such a case, the question whether the claim was within the exclusive jurisdiction of the NLRA would not turn on deciding whether her claim was a case of artful pleading. No more facts would need be determined and under such circumstances abstention would probably not be appropriate. Moreover, were the MCAD to assert jurisdiction under such circumstances, there would be a good argument that the MCAD was behaving in flagrant disregard of the Garmon preemption ______ principle.  22 Although Doulamis' complaint before the MCAD was filed on December 1, 1993 the proceedings before the MCAD began on November 23, 1993 when Doulamis underwent her intake interview. -49- such a theory as a basis to prevent abstention. Its initial brief, its reply brief, and the supplemental letter memorandum requested by the panel at oral argument are devoid of any argument that abstention is inappropriate because the NLRB proceeding was pending at the time of the MCAD complaint. It is therefore waived. See Grella v. Salem Five Cent Savings Bank, 42 ___ ______ ____________________________ F.3d 26, 36 (1st Cir. 1994). Moreover, there does not appear to be case law squarely supporting such a theory. Indeed, such a theory of abstention appears to be at odds with the treatment of the issue in at least one other circuit. See Sun Refining, 921 F.2d at 639-42 ___ _____________ (abstention was appropriate despite claim that the state law action violated the exclusive jurisdiction of OSHA and despite fact that OSHA action had been pending and concluded months before the state action was brought). As a matter of policy, the existence of a NLRB action at the time a parallel state proceeding is filed should not control the matter here. The NLRB, if it so chose, could have sought an injunction against the state proceedings if it thought the state proceedings conflicted with its exclusive jurisdiction. NLRB v. Nash-Finch Co., 404 ____ _______________ U.S. 138, 142-44 (1971).23 The fact that the NLRB did not so  ____________________ 23 Even the cases cited for the proposition that a federal court may enjoin a state court's intrusion into a federal agency's exclusive jurisdiction do not stand for such a broad proposition. In the only labor case cited, American Federation of Labor v. _____________________________ Watson, 327 U.S. 582 (1946), the court specifically said that for ______ such an injunction to issue there must be an immediate threat of irreparable injury, such as an "imminent threat to an entire system of collective bargaining." Id. at 595. No comparable ___ threat exists here. In fact, in Watson the Court explicitly said ______ -50- move speaks volumes. I respectfully dissent.  ____________________ that the threat of multiple prosecutions under the state law would not be sufficient to justify an injunction. See id. The ___ ___ ___ Court also abstained under the doctrine of Railroad Commission of _________ ______________________ Texas v. Pullman Co., 312 U.S. 496 (1941). See id. at 599.  _____ ___________ ___ ___ -51-